UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>                v.<br><br>HERITAGE THERMAL SERVICES, INC.<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)        Civil Action No.<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, the United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the United States Environmental Protection Agency ("EPA"), alleges the following.

## NATURE OF THE ACTION

1.     This is a civil action brought under Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b) ("the CAA"), for injunctive relief and the assessment of civil penalties against Defendant Heritage Thermal Services, Inc. ("Heritage" or "Defendant") alleging violations of Clean Air Act and the National Emission Standards for Hazardous Air Pollutants for Hazardous Waste Combustors promulgated pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, and codified at 40 C.F.R. Part 63, Subpart EEE.  The violations at issue in this action occurred at a hazardous waste incinerator owned and operated by Heritage in East Liverpool, Ohio (the "Heritage Facility").

## JURISDICTION, VENUE, AND NOTICE

2.      This Court has jurisdiction over the subject matter and over the parties pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355(a).  This Court has personal jurisdiction over the Parties.

3.      Authority to bring this action is vested in the United States Department of Justice, pursuant to Section 113(b), 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 516 and 519.

4.      Venue lies in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because the alleged violations occurred within this district at a facility located in East Liverpool, Ohio.

5.      The United States has provided notice of the commencement of this action to the Ohio Environmental Protection Agency ("Ohio EPA") in accordance with Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## PARTIES

6.      Plaintiff the United States of America is acting at the request of EPA, an agency of the United States.

7.      Defendant Heritage is incorporated under the laws of the State of Delaware and has its principal place of business in the state of Ohio.

8.      At all relevant times herein, Heritage has been a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

### A.      The Clean Air Act and NESHAPs/MACTs in General

9.      The Clean Air Act establishes a regulatory scheme to protect and enhance the quality of the nation's air resources so as to promote the public health and welfare and the productive capacity of its population.  42 U.S.C. § 7401(b)(1).

10.     Congress has established a list of hazardous air pollutants ("HAPs"), which includes, among others, certain compounds that are typically emitted as particulate matter, metals (antimony, cobalt, manganese, nickel, selenium), semi-volatile metals (cadmium and lead), low volatile metals (arsenic, beryllium, and chromium), dioxins and furans, hydrogen chloride and chlorine gas, and mercury compounds.  42 U.S.C. § 7412(b)(1).  Under Section 112(b)(2) of the CAA, 42 U.S.C. § 7412(b)(2), EPA periodically reviews the list of hazardous air pollutants and, where appropriate, revises the list by rule.

11.     Section 112(c) of the CAA, 42 U.S.C. § 7412(c), requires EPA to publish a list of all categories and subcategories of "major sources" and certain "area sources" of the hazardous air pollutants listed pursuant to 42 U.S.C. § 7412(b).

12.     Section 112(d) of the CAA, 42 U.S.C. § 7412(d), requires EPA to promulgate regulations establishing emissions standards for each category and subcategory of "major sources" and "area sources" of HAPs.  These emissions standards are called the National Emission Standards for Hazardous Air Pollutants ("NESHAPs") or Maximum Achievable Control Technology Standards ("MACTs").

13.     "Major sources" are sources or groups of "stationary sources" located within a contiguous area and under common control that emit or have the potential to emit ten tons per year or more of any HAP, or twenty-five tons per year or more of any combination of HAPs. 42 U.S.C. § 7412(a)(1); 40 C.F.R. § 63.2.

14.     An "area source" is any "stationary source" of HAPs that is not a major source. 42 U.S.C. § 7412(a)(2).

15.     A "stationary source" is any building, structure, facility, or installation that emits or may emit any air pollutant.  42 U.S.C. § 7412(a)(3) (by reference to 42 U.S.C. § 7411(a)).

16.    Sections 113(a)(3) and (b) of the CAA prohibit violations of any NESHAP.  Thus, a violation of a NESHAP is a violation of the CAA.

17.    Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA has promulgated multiple NESHAPs/MACTs containing emissions standards or, if not feasible, design, equipment, work practice, or operational standards which are codified at 40 C.F.R. Parts 61 and 63.

18.    Section 112 of the CAA provides that after the effective date of any NESHAP/MACT no person may operate a source in violation of an applicable NESHAP/MACT. 42 U.S.C. § 7412(i)(3); 40 C.F.R. § 63.4.

19.    Pursuant to Section 112(l) of the CAA, 42 U.S.C. § 7412(l), EPA may delegate to a State the authority to implement portions of the CAA in that State.

**B.    NESHAP Subpart A**

20.    Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA promulgated a general NESHAP ("NESHAP Subpart A"), which applies to all sources that are subject to NESHAP/MACT regulations in 40 C.F.R. Part 63.  40 C.F.R. §§ 63.1-63.16.  Under NESHAP Subpart A, each relevant NESHAP/MACT must identify which NESHAP Subpart A regulations apply to the sources covered by that NESHAP/MACT.  40 C.F.R. § 63.1(a)(4)(i).

21.    NESHAP Subpart A sets forth definitions that apply to other NESHAP/MACT regulations.  40 C.F.R. § 63.2.

22.    NESHAP Subpart A requires the owner/operator of a subject source to prepare and submit to EPA and/or delegated state agencies various reports including semi-annual excess emissions and continuous monitoring system performance reports and startup, periodic startup, shutdown, and malfunction reports.  40 C.F.R. § 63.10(d)(5)(i).

### C.      The HWC MACT

23.      Pursuant to Sections 112(c) and (d) of the CAA, 42 U.S.C. § 7412(c) and (d),
EPA has identified "hazardous waste combustors" as a category of sources of HAPs and
promulgated regulations applicable to such sources which are codified at 40 C.F.R. Part 63,
Subpart EEE (§§ 63.1200-1221) (the "HWC MACT").  64 Fed. Reg. 52,828 (Sept. 30, 1999).

24.      Hazardous waste combustors emit or have the potential to emit particulate matter,
metals (antimony, cobalt, manganese, nickel, selenium), semi-volatile metals (cadmium and
lead), low volatile metals (arsenic, beryllium, and chromium), dioxins and furans, carbon
monoxide and hydrocarbons, hydrogen chloride and chlorine gas, and mercury compounds, all of
which have adverse effects on human health and the environment.

25.      At all relevant times herein, the HWC MACT has applied to the owner/operator
of "affected sources" defined as "all hazardous waste combustors."  40 C.F.R. § 63.1200.

26.      At all relevant times herein, the HWC MACT has defined "hazardous waste
combustors" as including "hazardous waste incinerators" as well as "all associated firing systems
and air pollution control devices, as well as the combustion chamber equipment."  40 C.F.R.
§§ 63.1200-01.

27.      In turn, at all relevant times herein, 40 C.F.R. § 260.10, referenced in the
definition of "hazardous waste incinerator" in the HWC MACT, 40 C.F.R. § 63.1201, defines
"incinerator" as "any enclosed device that:  (1) uses controlled flame combustion and neither
meets the criteria for classification as a boiler, sludge dryer, or carbon regeneration unit, nor is
listed as an industrial furnace; or (2) meets the definition of infrared incinerator or plasma arc
incinerator"; (respectively defined as enclosed devices that use "electric powered resistance
heaters as a source of radiant heat followed by an afterburner using controlled flame combustion
and which is not listed as an industrial furnace" and "a high intensity electrical discharge or arc

as a source of heat followed by an afterburner using controlled flame combustion and which is not listed as an industrial furnace.")

28.     The HWC MACT established and later revised compliance dates for HWC MACT requirements for owners/operators of a hazardous waste incinerator that is an "existing source," the latest of which was October 14, 2008.

29.     At all relevant times herein, the HWC MACT and NESHAP Subpart A has defined "existing source" as "any affected source that is not a new source."  40 C.F.R. § 63.2 (incorporated into the HWC MACT, 40 C.F.R. Part 63, Subpart EEE, Table 1).  The HWC MACT defines a "new source" as any source subject to the HWC MACT, the construction or reconstruction of which is commenced after the dates specified for different types of sources and different requirements, which for hazardous waste incinerators the latest of which is April 20, 2004.  40 C.F.R. § 63.1206(a)(1).

30.     At all relevant times herein, the HWC MACT has required, with limited exceptions not relevant to this Complaint, the owner/operator of a hazardous waste incinerator to comply with NESHAP Subpart A.  40 C.F.R. Part 63, Subpart EEE, Table 1.

31.     At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste incinerator to comply with multiple emissions limits, destruction and removal efficiency ("DRE") standards and other operating parameters including the following limits and standards relevant to this Complaint.

| | |
|---|---|
| Dioxins and furans | 40 C.F.R. § 63.1219(a)(1) |
| Mercury | 40 C.F.R. § 63.1219(a)(2) |
| Semivolatile metals and low volatility metals | 40 C.F.R. § 63.1219(a)(4) |
| THC | 40 C.F.R. § 63.1219(a)(5) |
| Hydrogen chloride and chlorine gas | 40 C.F.R. § 63.1219(a)(6) |
| Particulate Matter | 40 C.F.R. § 63.1219(a)(7) |
| DRE Standard | 40 C.F.R. § 63.1219(c). |

32.     At all relevant times herein, the HWC MACT emissions limits, operational standards, and DRE standards have applied at all times except:  (i) during periods of start-up, shutdown, and malfunction; and (ii) when hazardous waste is not in the combustion chamber. 40 C.F.R. § 63.1206(b)(1).

33.     At all relevant times herein, the HWC MACT has prohibited the owner/operator of a hazardous waste incinerator from discharging or causing to be discharged into the atmosphere emissions of total hydrocarbons ("THC") in excess of 10 parts per million by volume dry basis (ppmvd) over an hourly rolling average (monitored continuously with a continuous emissions monitoring system), corrected to 7 percent oxygen, and reported as propane. 40 C.F.R. § 63.1219(a)(5)(ii).

34.     At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste incinerator to maintain the maximum combustion zone pressure lower than ambient pressure using an instantaneous monitor unless the combustion zone is sealed. 40 C.F.R. § 63.1206(c)(5)(i)(B).  Upon prior written approval of EPA, the owner/operator may use an alternative means to provide control of combustion system leaks equivalent to maintenance of combustion zone pressure lower than ambient pressure.  40 C.F.R. § 63.1206(c)(5)(i)(C).

35.     At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste incinerator to establish and comply with certain operating parameter limits ("OPLs") in order to demonstrate compliance with the HWC MACT emissions limits and the DRE standard.  40 C.F.R. § 63.1207(b)(1) and 40 C.F.R. §§ 63.1209(j)-(o); 40 C.F.R. § 63.1201 ("Operating requirements means . . . operating parameter limits . . . that ensure compliance with the emission standards.").

36.     At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste incinerator to confirm the adequacy of the OPLs in meeting applicable emissions limits and the DRE standard by conducting Comprehensive Performance Tests ("CPTs") and, after the CPT, submitting a Notification of Compliance ("NOC") to EPA or a delegated state agency containing the OPLs verified by the CPT.  40 C.F.R. § 63.1207(j).

37.     At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste incinerator to conduct additional CPTs no later than 61 months after the previous CPT and submit a new NOC following each CPT.  40 C.F.R. §§ 1207(d) and (j).

38.     At all relevant times herein, to ensure compliance with the DRE and other applicable emissions limits, the HWC MACT has required the owner/operator of a hazardous waste incinerator to establish OPLs for the following parameters that are relevant to this Complaint:

    a.      the minimum combustion chamber temperature on an hourly rolling average (measured at a location in each combustion chamber that best represents, as practicable, the bulk gas temperature in the combustion zone) (40 C.F.R. § 1209(j)(1), (k)(2));

    b.      the maximum flue gas flowrate or production rate on an hourly rolling average (to indicate gas residence time in the control device) (40 C.F.R. §§ 1209(j)(2), (k)(3), (m)(2), (n)(5), (o)(2));

    c.      for incinerators equipped with an activated carbon injection system, minimum carbon injection rate on an hourly rolling average for each injection location (40 C.F.R. §§ 63.1209(k)(6)(i), (l)(3) (incorporating by reference § 63.1209(k)(6));

    d.      for incinerators equipped with an activated carbon injection system, the minimum carrier fluid (gas or liquid) flowrate or pressure drop as an hourly rolling average for

each injection location (40 C.F.R. §§ 63.1209(k)(6)(ii), (l)(3) (incorporating by reference § 63.1209(k)(6));

   e. the minimum scrubber blowdown rate on an hourly rolling average (40 C.F.R. § 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1));

   f. for both high and low energy scrubbers, the minimum pressure drop across the wet gas scrubber on an hourly rolling average (40 C.F.R. § 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)), (l)(2) (incorporating by reference § 63.1209(o)(3)), (l)(3) (incorporating by reference § 63.1209(k)(5)), (m)(1)(i)(A), (o)(3)(i));

   g. the minimum scrubber tank volume or liquid level on an hourly rolling average (40 C.F.R. § 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)), (l)(3) (incorporating by reference § (k)(5)), (m)(1)(i)(B)(4));

   h. for high and low energy scrubbers, the minimum liquid to gas ratio or the minimum scrubber water flowrate and maximum flue gas flowrate on an hourly rolling average (40 C.F.R. § 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)), (l)(2) (incorporating by reference § 63.1209(o)(3)), (m)(1)(i)(C), (o)(3)(v));

   i. for electrostatic precipitators, a minimum operating parameter limit or a maximum operating parameter limit, as appropriate for the parameter, to define the operating limits within which the control device can operate and still continuously achieve the same operating conditions as during the performance test (40 C.F.R. § 63.1209(m)(1)(iv)(3); and

   j. the minimum scrubber pH on an hourly rolling average (40 C.F.R. § 63.1209(o)(3)(iv)).

  39. At all relevant times herein, the HWC MACT required the owner/operator of a hazardous waste incinerator to comply with the OPLs and other requirements set forth in its

latest NOC at all times except during start-up, shut-downs, and malfunctions provided that the owner/operator takes the corrective measures prescribed in the startup, shutdown, and malfunction plan.  40 C.F.R. §§ 63.1206(c)(1), (c)(2)(v)(A)(2), 1207(j)(1)(ii) and 63.1210(d)(2).

40.     At all relevant times herein, the HWC MACT has required that the owner/operator of a hazardous waste incinerator comply with applicable emissions limits and standards by meeting specified OPLs relevant to each limit or standard including the OPLs set forth in the following Subparagraphs (and in Paragraph 38 above).  Failure to comply with an OPL relevant to an emissions limit or standard constitutes failure to comply with that emissions limit or standard.  *See* 40 C.F.R. § 63.1206(c)(1)(iii).

a.     To comply with the DRE standard, the owner/operator must comply with the following OPLs that are relevant to this Complaint:

i.   minimum combustion chamber temperature (40 C.F.R. § 63.1209(j)(1)); and

ii.   maximum flue gas flowrate or production rate (40 C.F.R. § 63.1209(j)(2)).

b.     To comply with emissions limits on dioxins/furans, the owner/operator must comply with the following OPLs that are relevant to this Complaint:

i.   minimum combustion chamber temperature (40 C.F.R. § 63.1209(k)(3));

ii.   maximum flue gas flowrate or production rate (40 C.F.R. § 63.1209(k)(3));

iii.  minimum carbon injection rate for each injection location (40 C.F.R. § 63.1209(k)(6)(i));

iv.  minimum carrier fluid (gas or liquid) flowrate or pressure drop for each injection location (40 C.F.R. § 63.1209(k)(6)(ii));

v.  minimum scrubber blowdown rate (40 C.F.R. § 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)(i)(B)(1)(ii));

vi.  minimum pressure drop across the wet gas scrubber (40 C.F.R. § 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)(i)(A));

vii. minimum scrubber tank volume or liquid level (40 C.F.R.§ 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)(i)(B)); and

viii.    minimum liquid to gas ratio or the minimum scrubber water flowrate and maximum flue gas flowrate (40 C.F.R. § 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)(i)).

c.    To comply with emissions limits on mercury, the owner/operator must comply with the following OPLs that are relevant to this Complaint.

i.    minimum carbon injection rate (40 C.F.R. § 63.1209(l)(3) (incorporating by reference § 63.1209(k)(6));

ii.   minimum carrier fluid (gas or liquid) flowrate or pressure drop (40 C.F.R. § 63.1209(l)(3) (incorporating by reference § 63.1209(k)(6));

iii.  minimum pressure drop across the wet gas scrubber (40 C.F.R. § 63.1209(l)(2) (incorporating by reference § 63.1209(o)(3)), (l)(3) (incorporating by reference § 63.1209 (k)(5) (incorporating by reference § 63.1209(m)(1)));

iv.  minimum scrubber blowdown rate (40 C.F.R. § 63.1209(l)(3) (incorporating by reference § 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1));

v.   minimum scrubber tank volume or liquid level (40 C.F.R.

§ 63.1209(l)(3) (incorporating by reference § 63.1209(k)(5) (incorporating by reference

§ 63.1209(m)(1)); and

vi.  minimum liquid to gas ratio or the minimum scrubber water flowrate

and maximum flue gas flowrate (40 C.F.R. § 63.1209(l)(2) (incorporating by reference

§ 63.1209(o)(3)).

d.      To comply with emissions limits on semivolatile metals and low volatility

metals, the owner/operator must comply with the OPL for the maximum flue gas flowrate or

production rate (40 C.F.R. § 63.1209(n)(5)).

e.      To comply with emissions limits on particulate matter, the owner/operator

must comply with the following OPLs relevant to this Complaint:

i.    minimum pressure drop across the wet gas scrubber (40 C.F.R.

§ 1209(m)(1)(i)(A));

ii.   minimum scrubber blowdown rate (40 C.F.R.

§ 63.1209(m)(1)(i)(B)(1)(ii));

iii.  minimum scrubber tank volume or liquid level (40 C.F.R.

§ 63.1209(m)(1)(i)(B)(4));

iv.  minimum flue gas flowrate or production rate (40 C.F.R.

§ 63.1209(m)(2)); and

v.   the established operating parameters for electrostatic precipitators

(40 C.F.R. § 63.1209(m)(1)(iv)).

f.       To comply with the emissions limits on hydrogen chloride and chlorine

gas the owner/operator must comply with the following OPLs relevant to this Complaint:

       i.   maximum flue gas flowrate or production rate (40 C.F.R. § 63.1209(o)(2));

       ii.  minimum pressure drop across the wet gas scrubber (40 C.F.R § 63.1209(o)(3));

       iii.  minimum liquid to gas ratio or the minimum scrubber water flowrate and maximum flue gas flowrate (40 C.F.R. § 63.1209(o)(3)(v)); and

       iv.  minimum scrubber pH on an hourly rolling average (40 C.F.R. § 63.1209(o)(3)(iv)).

41.    At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste incinerator to use continuous monitoring systems to demonstrate compliance with applicable OPLs.  40 C.F.R. § 63.1209(b).

42.    At all relevant times herein, the HWC MACT required the owner/operator of a hazardous waste incinerator to duct combustion gases from the incinerator to the air pollution control system during automatic waste feed cut off while hazardous waste remains in the combustion chamber.  40 C.F.R. § 63.1206(c)(3)(ii).

43.    Pursuant to Section 112(l) of the CAA, 42 U.S.C. § 7412(l), EPA has delegated authority to implement the HWC MACT to Ohio EPA.  *See* 60 Fed. Reg. 18,790 (April 13, 1995).

    **D.**    **CAA Title V Requirements**

44.    Title V of the CAA, 42 U.S.C. §§ 7661-61f, and the regulations promulgated thereunder establish an operating permit program for certain sources, including "major sources" subject to NESHAP requirements.  42 U.S.C. § 7661a(a).  Under the Federal Title V Program and Regulations, all "applicable requirements" for compliance with the CAA, including

NESHAP requirements, are set forth in one operating permit known as a Title V permit. 42 U.S.C. § 7661c(a) and 40 C.F.R. § 70.6(a).

45.     Pursuant to Section 502(b) of the CAA, 42 U.S.C. § 7661a(b), EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a Title V permit program to be administered by any state or local air pollution control agency. 57 Fed. Reg. 32,250 (July 21, 1992). These regulations are codified at 40 C.F.R. Part 70.

46.     On August 15, 1995, EPA fully approved the Title V program of the state of Ohio, effective October 1, 1995. 60 Fed. Reg. 42,045 (October 1, 1995).

47.     The CAA, federal Title V regulations, and Ohio Title V regulations provide that no source subject to Title V may operate except in compliance with a Title V permit. 42 U.S.C. § 7661a(a); 40 C.F.R. §§ 70.1(b) and 70.7(b); Ohio Admin. Code 3745-77-02(A).

### E.     CAA Enforcement Authority

48.     Section 113(a)(1) and (3) of the CAA, 42 U.S.C. §§ 7413(a)(1) and (3), authorize EPA to bring a civil action under Section 113(b) if EPA finds that any person is in violation of any requirement or prohibition of Section 112 of the CAA or a Title V permit.

49.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Court to enjoin a violation, to require compliance, to assess and recover a civil penalty, and to award any other appropriate relief for each violation.

50.      Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes injunctive relief and civil penalties of up to $25,000 per day for each violation of the CAA or regulation promulgated or permit issued thereunder. This statutory maximum civil penalty has been increased to reflect inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act (28 U.S.C. § 2461), as amended, to $37,500 per day for each violation occurring after January 12, 2009, through November 2, 2015, and up to $97,229 per day per violation for each violation occurring after

November 2, 2015, and assessed after January 15, 2018.  *See* 73 Fed. Reg. 75,340-46 (Dec. 11, 2008); 78 Fed. Reg. 66,643-48 (Nov. 6, 2013); 81 Fed. Reg. 43,095 (July 1, 2016); 82 Fed. Reg. 3633 (Jan. 12, 2017); 83 Fed. Reg. 1193 (Jan. 10, 2018), all codified at 40 C.F.R. Part 19.

51.     Pursuant to Section 112(l)(7) of the CAA, 42 U.S.C. § 7412(l)(7), the United States has authority to enforce Section 112 programs in delegated States.

52.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), United States has authority to enforce provisions of state-issued Title V permits.  *See also* 40 C.F.R. § 70.6(b).

## GENERAL ALLEGATIONS

53.     The Heritage Facility incinerates hazardous wastes and other wastes.

54.     At all relevant times herein, the Heritage Facility has been located at 1250 St. George Street, East Liverpool, Ohio.

55.     At all relevant times herein, Heritage has been the "owner" and "operator" of the Heritage Facility within the meaning of the CAA and the regulations promulgated thereunder. 42 U.S.C. §§ 7412(a)(9), 7413(b), and 40 C.F.R. §§ 63.2, 63.1201 (definition of "you" as "owner" and "operator").

56.     At all relevant times herein, the Heritage Facility has been a "stationary source" within the meaning of Section 112 of the CAA.  42 U.S.C. § 7412(a)(3) (referencing 42 U.S.C. § 7411(a)).

57.     At all relevant times herein, the Heritage Facility has been a "major source" of HAPs within the meaning of the CAA and the regulations promulgated thereunder.  *See* 42 U.S.C. § 7412(a); 40 C.F.R. § 63.2.

58.     At all relevant times herein, the Heritage Facility has included a "hazardous waste combustor" within the meaning of the HWC MACT.  *See* 40 C.F.R. §§ 63.1200-01.

59.     At all relevant times herein, the Heritage hazardous waste combustor has included a "hazardous waste incinerator" (Heritage incinerator) within the meaning of the HWC MACT. *See* 40 C.F.R. §§ 63.1200-01.

60.     At all relevant times herein, Heritage has burned "hazardous waste" in the Heritage incinerator within the meaning of the HWC MACT.  *See* 40 C.F.R. §§ 63.1200-01.

61.     At all relevant times herein, the Heritage Facility has been an "existing source" within the meaning of the CAA, NESHAP Subpart A and the HWC MACT.  *See* 42 U.S.C. § 7412(a); 40 C.F.R. §§ 63.2, 63.1201.

62.     At all relevant times herein, the Heritage incinerator was an "affected source" within the meaning of NESHAP Subpart A and the HWC MACT.  *See* 40 C.F.R. §§ 63.2, 63.1201.

63.     At all relevant times herein, Heritage, as the owner and operator of the Heritage incinerator, has been subject to the requirements of the NESHAP Subpart A and HWC MACT.

64.     At all relevant times herein, the Heritage incinerator has included multiple components and equipment including the following which are relevant to this Complaint.

        a.     Rotary Kiln:  a refractory brick-lined steel cylinder into which hazardous waste (pumpable waste, drums and containers, loose bulk solids) is fed and incinerated.  The Rotary Kiln is the primary combustion chamber for the Heritage incinerator.

        b.     Secondary Combustion Chamber ("SCC"):  the exhaust from incinerated waste flows into this chamber from the Rotary Kiln for further combustion, which is enhanced by the controlled injection of oxygen.

c.      Spray dryer absorber ("SDA"):  from the SCC the flue gas enters a heat recovery boiler, which reduces the temperature of the gas, and then enters the SDA which further cools flue gas.

d.      ESP and Scrubber:  from the SDA the flue gas enters a flue gas cleaning system consisting of an electrostatic precipitator ("ESP") followed by a four stage wet scrubber ("Scrubber") which consists of a high energy ring jet scrubber stage ("Ring Jet Scrubber") and a low energy packed bed scrubber stage ("Packed Bed Scrubber").

e.      Carbon Injection System:  the Heritage Incinerator is equipped with an enhanced carbon injection system which injects carbon to control dioxins/furans and mercury emissions at two locations:  the SDA and Scrubber.

65.      Heritage conducted CPTs with respect to the Heritage incinerator in March, April, May, and September of 2010.

66.      Based on the CPT results from March, April, May, and September 2010, Heritage submitted a NOC to Ohio EPA and EPA Region 5 on November 18, 2010, ("2010 NOC") which identified the OPLs for the Heritage incinerator required by 40 C.F.R. §§ 63.1209(j)-(o).

67.      The OPLs identified in the 2010 NOC became effective on November 18, 2010 and remained in effect until June 18, 2015.

68.      On March 24-26, 2015, Heritage conducted CPTs for the Heritage incinerator.

69.      On June 18, 2015, Heritage submitted a subsequent NOC ("2015 NOC") to EPA and Ohio EPA identifying OPLs for the Heritage incinerator and Heritage incinerator required by 40 C.F.R. §§ 63.1209(j)-(o), based on the March 24-26, 2015 CPT.

70.      The OPLs identified in the 2015 NOC became effective on June 18, 2015, and remain in effect to the present.

71.     Pursuant to NESHAP Subpart A, 40 C.F.R. § 63.10(e)(3), Heritage is required to submit a semi-annual excess emissions and continuous monitoring system performance report and summary report to Ohio EPA.

72.     As allowed under 40 C.F.R. § 63.10(d)(5)(i), Heritage combines its semi-annual startup, shutdown and malfunction report, required under 40 C.F.R. § 63.10(d)(5)(i), with the excess emissions and continuous monitoring system performance reports required by 40 C.F.R. § 63.10(e)(3) (collectively, Heritage's "Semi-Annual Reports").

73.     Ohio EPA has issued Heritage the following permits pursuant to Title V of the CAA, 42 U.S.C. § 7661a (collectively "Heritage Title V Permits").

        a.      On February 18, 2004, Ohio EPA issued its initial Title V permit (No. P0084371) for the Heritage Facility, effective February 18, 2004.

        b.      On December 22, 2008, Ohio EPA issued a Title V renewal permit for the Heritage Facility (No. P0084372), effective December 22, 2008 ("2008 Title V Permit").

        c.      On July 5, 2011, Ohio EPA issued a Title V permit modification for the Heritage Facility (No. P0108372), effective July 5, 2011 ("2011 Title V Permit").

        d.      On June 28, 2017, Ohio EPA issued a draft Title V renewal permit  for the Heritage Facility (No. P0115099), which is not yet effective.

74.     The Title V permits described in Subparagraphs 73.a-d above incorporate applicable NESHAP Subpart A and HWC MACT requirements set forth in Paragraphs 20-43 above.

## FIRST CLAIM FOR RELIEF

### Violation of THC Emission Standard

75.     Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

76.     At all relevant times herein, the HWC MACT and the Heritage Title V Permits prohibited Heritage from discharging or causing to be discharged into the atmosphere from the Heritage incinerator emissions of THC in excess of 10 ppmvd over an hourly rolling average corrected to 7 percent oxygen, and reported as propane.  *See* 40 C.F.R. § 63.1219(a)(5)(ii); Conditions 5(b)(1)(e) and 5(b)(2)(f) of the 2008 Title V Permit and the 2011 Title V Permit.

77.     Semi-Annual Reports prepared and submitted by Heritage show that on numerous occasions beginning on or before November 24, 2010, and continuing thereafter, Heritage discharged into the atmosphere combustion gases from the Heritage incinerator that contained THC in excess of 10 ppmvd over an hourly rolling average, corrected to 7 percent oxygen, and reported as propane, in violation of the HWC MACT and the 2008 and 2011 Title V Permits. *See* 40 C.F.R. § 63.1219(a)(5)(ii), and Conditions 5(b)(1)(e) and 5(b)(2)(f) of the 2008 and the 2011 Title V Permits.

78.     Unless restrained by an Order of the Court, these violations will continue.

79.     As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for injunctive relief and the assessment of a civil penalty of up to the statutory maximum amounts set forth in Paragraph 50 above per day for each violation.

## SECOND CLAIM FOR RELIEF

### Violation of Combustion System Leak Control Requirements

80.     Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

81.     At all relevant times herein, the HWC MACT and the Heritage Title V Permits required Heritage to control combustion system leaks of HAPs at the Heritage incinerator by one of the methods listed in 40 C.F.R. § 63.1206(c)(5).  *See* 40 C.F.R. §§ 63.1206(c)(5)(i)(B) and (C); and Conditions 5(b)(1)(e), 5(b)(2)(l) and 5(c)(5) of the 2008 and 2011 Title V Permits.

82.     Pursuant to 40 C.F.R. § 63.1206(c)(5)(i)(C), Heritage received approval from EPA Region 5 to use an alternative means to control combustion system leaks equivalent to maintenance of combustion zone pressure lower than ambient pressure.  This approved alternative method requires Heritage to comply with the following pressure requirements in the SCC:

a.     The pressure in the SCC must be greater than zero inches of water column for more than 10 seconds; or

b.     The pressure in the SCC must be greater than the pressure in the inlet or outlet end shroud at any time; or

c.     The pressure in the SCC must be greater than the ambient pressure for more than 2 seconds during operating time when the pressurizing equipment for either shroud has failed.

83.     The alternative combustion system leak control requirements set forth in the preceding Paragraph are contained in the 2008 and 2011 Title V Permits at Condition 5(c)(5).

84.     Semi-Annual Reports prepared and submitted by Heritage show that on one or more days beginning on or before December 12, 2010 and continuing thereafter the Heritage failed to maintain SCC pressure in accordance with the requirements of Paragraph 82 in violation

of the HWC MACT and the 2008 and 2011 Title V Permits.  *See* 40 C.F.R.

§§ 63.1206(c)(5)(i)(B) and (C); and Conditions 5(b)(1)(e), 5(b)(2)(l) and 5(c)(5) of the 2008 and

2011 Title V Permits.

85.     Unless restrained by an Order of the Court, these violations will continue.

86.     As a result of the above-listed violations and pursuant to Section 113(b) of the

CAA, 42 U.S.C. § 7413(b), Heritage is liable for injunctive relief and the assessment of a civil

penalty up to the statutory maximum amounts set forth in Paragraph 50 above per violation per

day for each violation.

### THIRD CLAIM FOR RELIEF

**Violation of the OPL for Minimum Combustion Chamber Temperature,
DRE Standard and Dioxins/Furans Emissions Limit
at the Secondary Combustion Chamber**

87.     Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

88.     At all relevant times herein, HWC MACT and the Heritage Title V Permits

required Heritage to establish and comply with an OPL for the minimum combustion chamber

temperature for each combustion chamber in the Heritage incinerator in order to comply with the

HWC MACT's DRE standard and dioxins/furans emissions limit.  *See* 40 C.F.R. § 63.1209(j)(1),

(k)(2); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6) and 5(f)(14) of the 2008 and 2011

Title V Permits.

89.     Heritage has established this OPL separately for the Rotary Kiln and the SCC.

90.     In the 2010 NOC, Heritage identified the OPL for the minimum combustion

chamber temperature for the SCC as 1747° Fahrenheit on an hourly rolling average which was

effective for the period of November 18, 2010 through June 17, 2015.

91.     In the 2015 NOC, Heritage identified the OPL for the minimum combustion chamber temperature OPL for the SCC as 1710° Fahrenheit on an hourly rolling average which is effective for the period of June 18, 2015 through the present.

92.     Semi-Annual Reports prepared and submitted by Heritage show that on numerous days beginning on or before January 6, 2011 and continuing thereafter, Heritage operated the Heritage incinerator in a manner such that the combustion chamber temperature inside the SCC fell below the applicable minimum combustion chamber temperature OPL for the SCC in violation of the HWC MACT and the 2008 and 2011 Title V Permits.  *See* 40 C.F.R. §§ 63.1206(c)(1), 63.1209(j)(1), (k)(2); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6) and 5(f)(14) of the 2008 and 2011 Title V Permits.

93.     The violations of the minimum combustion chamber temperature OPL for the SCC set forth in the preceding Paragraph also constitute violations of the DRE standard and dioxins/furans emissions limit in the HWC MACT and the 2008 and 2011 Title V Permits.  *See* 40 C.F.R. §§ 63.1206(c)(1)(iii), 63.1209(j), (k)(2), 63.1219(a)(1)(i)(A) and (c); and Conditions 5(b)(2)(a), 5(b)(2)(i), 5(f)(6) and 5(f)(14) of the 2008 and 2011 Title V Permits.

94.     Unless restrained by an Order of the Court, these violations will continue.

95.     As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for injunctive relief and the assessment of a civil penalty up to the statutory maximum amounts set forth in Paragraph 50 above per violation per day for each violation.

## FOURTH CLAIM FOR RELIEF

**Violation of the OPL for Minimum Combustion Chamber Temperature,
DRE Standard and Dioxins/Furans Emissions Limit
at the Rotary Kiln**

96.     Paragraphs 1 through 74 are re-alleged and incorporated herein by reference

97.     At all relevant times herein, HWC MACT and the Heritage Title V Permits

required Heritage to establish and comply with an OPL for the minimum combustion chamber

temperature for each combustion chamber in the Heritage incinerator in order to comply with the

HWC MACT's DRE standard and dioxins/furans emissions limit.  *See* 40 C.F.R.

§§ 63.1209(j)(1), (k)(2); and Conditions 5(b)(1)(e), 5((b)(2)(l), 5(d)(1), 5(f)(6) and 5(f)(14) of

the 2008 and 2011 Title V Permits.

98.     Heritage has established this OPL separately for the Rotary Kiln and the SCC.

99.     In the 2010 NOC, Heritage identified the OPL for the minimum combustion

chamber temperature for the Rotary Kiln as 1718° Fahrenheit on an hourly rolling average which

was effective for the period of November 18, 2010 through June 17, 2015.

100.     In the 2015 NOC, Heritage identified the OPL for the minimum combustion

chamber temperature for the Rotary Kiln as 1695° Fahrenheit on an hourly rolling average which

is effective for the period of June 18, 2015 through the present.

101.     Semi-Annual Reports prepared and submitted by Heritage show that on numerous

days beginning on or before January 6, 2011 and continuing thereafter, Heritage operated the

Heritage incinerator in a manner such that the combustion chamber temperature inside the

Rotary Kiln fell below the applicable minimum combustion chamber temperature OPL for the

Rotary Kiln in violation of the HWC MACT and the 2008 and 2011 Title V Permits.  *See* 40

C.F.R. §§ 63.1206(c)(1), 63.1209(j)(1), (k)(2)); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1),

5(f)(6) and 5(f)(14) of the 2008 and 2011 Title V Permits.

102.    The violations of the minimum combustion chamber temperature OPL for the Rotary Kiln set forth in the preceding paragraph also constitute violations of the DRE standard and dioxins/furans emissions limit set forth in the HWC MACT and the 2008 and 2011 Title V Permits.  *See* 40 C.F.R. §§ 63.1206(c)(1)(iii), 63.1209(j), 63.1209(k)(2), 63.1219(a)(1)(i)(A) and 63.1219(c); and Conditions 5(b)(2)(a), 5(b)(2)(i), 5(f)(6) and C.5(f)(14) of the 2008 and 2011 Title V Permits.

103.    Unless restrained by an Order of the Court, these violations will continue.

104.    As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for injunctive relief and the assessment of a civil penalty up to the statutory maximum amounts set forth in Paragraph 50 above per violation per day for each violation.

### FIFTH CLAIM FOR RELIEF

**Violation of the OPL for Maximum Flue Gas Flowrate or Production Rate
the DRE Standard and Emission Limits on Dioxins/Furans, Particulate Matter, Metals,
Hydrogen Chloride and Chlorine Gas**

105.    Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

106.    At all relevant times herein, HWC MACT and the Heritage Title V Permits required Heritage to establish and comply with an OPL for the maximum flue gas flowrate or production rate in order to comply with the HWC MACT's DRE standard and emissions limits on dioxins/furans, particulate matter, semivolatile and low volatility metals, hydrogen chloride and chlorine gas.  *See* 40 C.F.R. §§ 63.1209(j)(2), (k)(3), (m)(2), (n)(5), (o)(2); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), 5(f)(8), 5(f)(9), 5(f)(12), 5(f)(13), and 5(f)(14), of the 2008 and 2011 Title V Permits.

107.    In the 2010 NOC, Heritage identified the OPL for the maximum flue gas flowrate as 67,505 standard cubic feet per minute (scfm) on a 1-hour rolling average, which was effective for the period of November 18, 2010 through June 17, 2015.

108.    Semi-Annual Reports prepared and submitted by Heritage show that on numerous days beginning on or before April 12, 2011, and continuing through October 9, 2014, Heritage operated the Heritage incinerator in a manner that exceeded the maximum flue gas flowrate OPL of 67,505 scfm on an hourly rolling average in violation of the HWC MACT and the 2008 and 2011 Title V Permits.  *See* 40 C.F.R. §§ 63.1206(c)(1), 63.1209(j)(2), (k)(3), (m)(2), (n)(5), (o)(2); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), 5(f)(8), 5(f)(9), 5(f)(12), 5(f)(13), and 5(f)(14), of the 2008 and 2011 Title V Permits.

109.    The violations of the maximum flue gas flowrate OPL set forth in the preceding Paragraph also constitute violations of the DRE standard and emissions limits for dioxins/furans, particulate matter, semivolatile and low volatility metals, hydrogen chloride and chlorine gas set forth in the HWC MACT and the 2008 and 2011 Title V Permits.  *See* 40 C.F.R. §§ 63.1206(c)(1)(iii), 63.1209(j), (k), (m), (n), (o), 63.1219(a)(1)(i)(A), 63.1219(c), 63.1219(a)(7), 63.1219(a)(6), and 63.1219(a)(3); and Conditions 5(b)(2)(a), 5(b)(2)(c), 5(b)(2)(d), 5(b)(2)(g), 5(b)(2)(h), and 5(b)(2)(i), 5(f)(6), 5(f)(8), 5(f)(9), 5(f)(12), 5(f)(13), and 5(f)(14) of the 2008 and 2011 Title V Permits.

110.    As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for the assessment of a civil penalty up to the statutory maximum amounts set forth in Paragraph 50 above per violation per day for each violation.

## SIXTH CLAIM FOR RELIEF

**Violation of OPL on Minimum Carbon Injection Rate and Emissions Limits for Dioxins/Furans and Mercury at the SDA**

111.     Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

112.     At all relevant times herein, the HWC MACT and the 2011 Title V Permit required Heritage to establish and comply with an OPL on the minimum carbon injection rate at each location where the system injects in order to comply with the HWC MACT's dioxins/furans and mercury emissions limits.  *See* 40 C.F.R. §§ 63.1209(k)(6)(i) and 63.1209(l)(3) (incorporating by reference 63.1209(k)(6)); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), and 5(f)(7) of the 2011 Title V Permit.

113.     Pursuant to the HWC MACT, Heritage separately established the OPL for the minimum carbon injection rate in its 2010 NOC for each of the two locations where carbon is injected:  (i) the SDA and (ii) the Scrubber.

114.     In the 2010 NOC, Heritage identified the OPL for the minimum carbon injection rate as confidential business information pursuant to 40 C.F.R. Part 2, Subpart B thereby preventing this Complaint from stating the limit.  This limit was effective for the period of November 18, 2010 through June 17, 2015.

115.     Semi-Annual Reports prepared and submitted by Heritage show that on numerous days from June 21, 2012 through November 29, 2014, Heritage operated the Heritage incinerator in a manner that failed to comply with the minimum carbon injection rate OPL at the SDA in violation of the HWC MACT and the 2011 Title V Permit.  *See* 40 C.F.R. §§ 63.1206(c)(1), 63.1209(k)(6)(i), and 63.1209(l)(3) (incorporating by reference 63.1209(k)(6)); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), and 5(f)(7) of the 2011 Title V Permit.

116.    The violations of the minimum carbon injection rate OPL at the SDA set forth in the preceding Paragraph also constitute violations of the emissions limits for dioxins/furans and mercury set forth in the HWC MACT and the 2011 Title V Permit.  *See* 40 C.F.R. §§ 63.1206(c)(1)(iii), 63.1209(k)-(l), 63.1219(a)(1)(i)(A), 63.1219(a)(2); and Conditions 5(b)(2)(a), 5(b)(2)(b), 5(f)(6), 5(f)(7), of the 2011 Title Permit.

117.    As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for the assessment of a civil penalty up to the statutory maximum amounts set forth in Paragraph 50 above per violation per day for each violation.

## SEVENTH CLAIM FOR RELIEF

**Violation of OPL on Minimum Carbon Injection Rate and Emissions Limits for Dioxins/Furans and Mercury at the Scrubber**

118.    Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

119.    At all relevant times herein, the HWC MACT and the 2011 Title V Permit required Heritage to establish and comply with an OPL on the minimum carbon injection rate at each location where the system injects in order to comply with the HWC MACT's dioxins/furans and mercury emissions limits.  *See* 40 C.F.R. §§ 63.1209(k)(6)(i) and 63.1209(l)(3) (incorporating by reference § 63.1209(k)(6)); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), and 5(f)(7) of the 2011 Title V Permit.

120.    Pursuant to the HWC MACT, Heritage separately established the OPL for the minimum carbon injection rate in its 2010 NOC for each of the two locations where carbon is injected:  (i) the SDA and (ii) the Scrubber.

121.    In the 2010 NOC, Heritage identified the OPL for the minimum carbon injection rate as confidential business information pursuant to 40 C.F.R. Part 2, Subpart B thereby

preventing this Complaint from stating the limit.  This limit was effective for the period of November 18, 2010 through June 17, 2015.

122.    Semi-Annual Reports prepared and submitted by Heritage show that on numerous days from June 21, 2012 through November 29, 2014, Heritage operated the Heritage incinerator in a manner that failed to comply with the minimum carbon injection rate OPL at the Scrubber in violation of the HWC MACT and the 2011 Title V Permit.  *See* 40 C.F.R. §§ 63.1206(c)(1), 63.1209(k)(6)(i) and 63.1209(l)(3) (incorporating by reference § 63.1209(k)(6)); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), and 5(f)(7) of the 2011 Title V Permit.

123.    The violations of the minimum carbon injection rate OPL at the Scrubber set forth in the preceding Paragraph also constitute violations of emissions limits for dioxins/furans and mercury set forth in the HWC MACT and the 2011 Title V Permit.  *See*  40 C.F.R. §§ 63.1206(c)(1)(iii), 63.1209(k)-(l), 63.1219(a)(1)(i)(A), 63.1219(a)(2); and Conditions 5(b)(2)(a), 5(b)(2)(b), 5(f)(6), and 5(f)(7), of the 2011 Title Permit.

124.    As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for the assessment of a civil penalty up to the statutory maximum amounts set forth in Paragraph 50 above per violation per day for each violation.

## EIGHTH CLAIM FOR RELIEF

### Violation of OPL for Minimum Carrier Fluid Flowrate or Pressure Drop and Emissions Limits for Dioxins/Furans and Mercury at the SDA

125.    Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

126.    At all relevant times herein, the HWC MACT and the 2008 Title V Permit required Heritage to establish and comply with an OPL on the minimum carrier fluid flowrate or pressure drop (minimum carbon feed pressure) at the Heritage Incinerator based on the

manufacturer's specifications in order to comply with the HWC MACT's dioxins/furans and mercury emissions limits.  *See* 40 C.F.R. §§ 63.1209(k)(6)(ii) and 63.1209(l)(3) (incorporating § 63.1209(k)(6)); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), and 5(f)(7) of the 2008 and 2011 Title V Permits.

127.    Pursuant to the HWC MACT, Heritage separately established an OPL for the pressure drop (minimum carbon feed pressure) in its 2010 NOC for each of the two locations where carbon is injected:  (i) the SDA; and (ii) the Scrubber.

128.    In the 2010 NOC, Heritage identified the OPL for the minimum carbon feed pressure as 3.0 psig on an hourly rolling average at each location effective for the period of November 18, 2010 through June 17, 2015.

129.    Semi-Annual Reports prepared and submitted by Heritage show that on numerous days from April 12, 2011 through May 11, 2011, Heritage operated the Heritage incinerator in a manner that failed to comply with the minimum carbon feed pressure OPL at the SDA in violation of the HWC MACT and the 2008 Title V Permit.  *See* 40 C.F.R. §§ 63.1206(c)(1), 63.1209(k)(6)(ii) and 63.1209(l)(3) (incorporating § 63.1209(k)(6)); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), and 5(f)(7) of the 2008 Title V Permit.

130.    The violations of the minimum carbon feed pressure OPL at the SDA set forth in the preceding Paragraph also constitute violations of the emissions limits for dioxins/furans and mercury set forth in the HWC MACT and the 2008 Title V Permit.  *See* 40 C.F.R. §§ 63.1206(c)(1)(iii), 63.1209(k)-(l), 63.1219(a)(1)(i)(A), 63.1219(a)(2); and Conditions 5(b)(2)(a), 5(b)(2)(b), 5(f)(6), and 5(f)(7) of the 2008 Title Permit.

131.    As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for the assessment of a civil penalty up to the

statutory maximum amounts set forth in Paragraph 50 above per violation per day for each violation.

## NINTH CLAIM FOR RELIEF

### Violation of OPL for Minimum Carrier Fluid Flowrate or Pressure Drop and Emissions Limits for Dioxins/Furans and Mercury at the Scrubber

132.     Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

133.     At all relevant times herein, the HWC MACT and the Heritage Title V Permits required Heritage to establish and comply with an OPL on the minimum carrier fluid flowrate or pressure drop (minimum carbon feed pressure) at the Heritage Incinerator in order to comply with the HWC MACT's dioxins/furans and mercury emissions limits.  *See* 40 C.F.R. §§ 63.1209(k)(6)(ii) and 63.1209(l)(3) (incorporating § 63.1209(k)(6)); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), and 5(f)(7) of the 2008 and 2011 Title V Permits.

134.     Pursuant to the HWC MACT, Heritage separately established an OPL for the minimum carbon feed pressure in its 2010 NOC for each of the two locations where carbon is injected:  (i) the SDA; and (ii) the Scrubber.

135.     In the 2010 NOC, Heritage identified the OPL for minimum carbon feed pressure as 3.0 psig on an hourly rolling average at each location effective for the period of November 18, 2010 through June 17, 2015.

136.     In the 2015 NOC, Heritage identified the OPL for minimum carbon feed pressure as 3.0 psig on an hourly average at each locating effective for the period of June 18, 2015 through the present.

137.     Semi-Annual Reports prepared and submitted by Heritage show that on numerous days from April 13, 2011 through July 30, 2016, Heritage operated the Heritage incinerator in a manner that failed to comply with the minimum carbon feed pressure OPL at the Scrubber in

violation of the HWC MACT and the 2008 and 2011 Title V Permits. *See* 40 C.F.R.

§§ 63.1206(c)(1), 63.1209(k)(6)(ii) and 63.1209(l)(3) (incorporating § 63.1209(k)(6)); and

Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), 5(f)(7) of the 2008 and 2011 Title V Permits.

138.    The violations of the minimum carbon feed pressure OPL at the Scrubber set forth

in the preceding Paragraph also constitute violations of the emissions limits for dioxins/furans

and mercury set forth in the HWC MACT and the 2008 and 2011 Title V Permits.  *See* 40 C.F.R.

§§ 63.1206(c)(1)(iii), 63.1209(k)-(l), 63.1219(a)(1)(i)(A), 63.1219(a)(2); and Conditions

5(b)(2)(a), 5(b)(2)(b), 5(f)(6), and 5(f)(7) of the 2008 and 2011 Title Permits.

139.    As a result of the above-listed violations and pursuant to Section 113(b) of the

CAA, 42 U.S.C. § 7413(b), Heritage is liable for the assessment of a civil penalty up to the

statutory maximum amounts set forth in Paragraph 50 above per violation per day for each

violation.

## <u>TENTH CLAIM FOR RELIEF</u>

**Violation of OPL for Minimum Scrubber Blowdown Rate and Emissions Limits for
Dioxins/Furans, Mercury and Particulate Matter at the Ring Jet Scrubber**

140.    Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

141.    At all relevant times herein, the HWC MACT and the Heritage Title V Permits

required Heritage to establish and comply with an OPL on the minimum scrubber blowdown rate

for the Ring Jet Scrubber at the Heritage Incinerator in order to comply with the HWC MACT's

dioxins/furans, mercury and particulate matter emissions limits.  *See* 40 C.F.R. §§ 63.1209(k)(5)

(incorporating by reference § 63.1209(m)(1)), (l)(3) (incorporating by reference

§ 63.1209(k)(5)), (m)(1); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), 5(f)(7) and

5(f)(13) of the 2008 and 2011 Title V Permits.

142.    In the 2010 NOC, Heritage identified the OPL for minimum scrubber blowdown rate for the Ring Jet Scrubber as 19.5 gallons per minute (gpm) on an hourly rolling average effective for the period of November 18, 2010 through June 17, 2015.

143.    Semi-Annual Reports prepared and submitted by Heritage show that on numerous days from April 13, 2011 through December 4, 2013, Heritage operated the Heritage incinerator in a manner that failed to comply with the minimum scrubber blowdown rate OPL for the Ring Jet Scrubber in violation of the HWC MACT and the 2008 and 2011 Title V Permits.  *See* 40 C.F.R. §§ 63.1206(c)(1), 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)), (l)(3) (incorporating by reference § 63.1209(k)(5)), (m)(1); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), 5(f)(7) and 5(f)(13) of the 2008 and 2011 Title V Permits

144.    The violations of the minimum scrubber blowdown rate OPL for the Ring Jet Scrubber set forth in the preceding Paragraph also constitute violations of the emissions limits for dioxins/furans, mercury and particulate matter set forth in the HWC MACT and the 2008 and 2011 Title V Permits.  *See* 40 C.F.R. §§ 63.1206(c)(1)(iii), 63.1209 (k), (l), (m), 63.1219(a)(1)(i)(A), 63.1219(a)(2) 63.1219(a)(7) and Conditions 5(b)(2)(a), 5(b)(2)(b), 5(b)(2)(h) 5(f)(6), 5(f)(7), and 5(f)(13), of the 2008 and 2011 Title V Permits.

145.    As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for the assessment of a civil penalty up to the statutory maximum amounts set forth in Paragraph 50 above per violation per day for each violation.

## ELEVENTH CLAIM FOR RELIEF

**Violation of OPL for Minimum Scrubber Pressure Drop and Emissions Limits for Dioxins/Furans, Mercury, Hydrogen Chloride and Chlorine, and Particulate Matter at the Ring Jet Scrubber**

146.    Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

147.    At all relevant times herein, the HWC MACT and the Heritage Title V Permits required Heritage to establish and comply with an OPL for the minimum pressure drop across the scrubber (minimum scrubber pressure drop) for the Ring Jet Scrubber in order to comply with the HWC MACT's dioxins/furans, mercury, particulate matter and hydrogen chloride and chlorine gas emissions limits.  *See* 40 C.F.R. § 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)), (l)(3) (incorporating by reference § 63.1209(k)(5)), (m)(1)(i)(B)(1)(ii), (o)(3)(i)); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), 5(f)(7), 5(f)(12) and 5(f)(13) of the 2008 and 2011 Title V Permits

148.    In the 2010 NOC, Heritage identified the OPL for minimum scrubber pressure drop for the Ring Jet Scrubber as 28.0 inches of water column on an hourly rolling average effective for the period of November 18, 2010 through June 17, 2015.

149.    In the 2015 NOC, Heritage identified the OPL for minimum scrubber pressure drop for the Ring Jet Scrubber as 27.0 inches of water column on an hourly rolling average effective for the period of June 18, 2015 to the present.

150.    Semi-Annual Reports prepared and submitted by Heritage show that on numerous days beginning on or before January 30, 2011 and continuing thereafter, Heritage operated the Heritage incinerator in a manner that failed to comply with the applicable minimum scrubber pressure drop OPL for the Ring Jet Scrubber in violation of the HWC MACT and the 2008 and 2011 Title V Permits.  *See* 40 C.F.R. §§ 63.1206(c)(1), 63.1209(k)(5)(ii) (incorporating by

reference § 63.1209(m)(1)), (l)(3) (incorporating by reference § 63.1209(k)(5)), (m)(1); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), 5(f)(7), 5(f)(12), and 5(f)(13) of the 2008 and 2011 Title V Permits.

151.    The violations of the minimum scrubber pressure drop OPL for the Ring Jet Scrubber set forth in the preceding Paragraph also constitute violations of the emissions limits for dioxins/furans, mercury, particulate matter and hydrogen chloride and chlorine gas set forth in the HWC MACT and the 2008 and 2011 Title V Permits.  *See* 40 C.F.R. §§ 63.1209 (k)-(m), (o), 40 C.F.R. §§ 63.1206(c)(1)(iii), 63.1209(k)-(m), 63.1219(a)(1)(i)(A), 63.1219(a)(2), 63.1219(a)(6), 63.1219(a)(7) and Conditions 5(f)(6), 5(f)(7), 5(f)(12), 5(f)(13), 5(b)(2)a., b., g. and h. of the 2008 and 2011 Title V Permits.

152.    Unless restrained by an Order of the Court, these violations will continue.

153.    As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for injunctive relief and the assessment of a civil penalty up to the statutory maximum amounts set forth in Paragraph 50 above per violation per day for each violation.

## TWELFTH CLAIM FOR RELIEF

### Violation of OPL for Minimum Scrubber Pressure Drop and Emissions Limits for Dioxins/Furans, Particulate Matter, Mercury, Hydrogen Chloride and Chlorine Gas at the Packed Bed Scrubber

154.    Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

155.    At all relevant times herein, the HWC MACT and the 2011 Title V Permit required Heritage to establish and comply with an OPL for the minimum pressure drop across the scrubber (minimum scrubber pressure drop) for the Packed Bed Scrubber in order to comply with the HWC MACT's emissions limits for dioxins/furans, particulate matter, mercury,

hydrogen chloride and chlorine gas.  *See* 40 C.F.R. § 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)), (l)(2) (incorporating by reference § 63.1209(o)(3)), (l)(3) (incorporating by reference § 63.1209(k)(5)), (o)(3)(ii); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(7), 5(f)(12) of the 2011 Title V Permit.

156.    In the 2015 NOC, Heritage identified the OPL for minimum scrubber pressure drop for the Packed Bed Scrubber as is 1.3 inches of water column water column on an hourly rolling average effective for the period of June 18, 2015 to the present.

157.    Semi-Annual Reports prepared and submitted by Heritage show that on September 5, 2015, and February 18, 2017, Heritage operated the Heritage incinerator in a manner that failed to comply with the applicable minimum scrubber pressure drop OPL for the Packed Bed Scrubber in violation of the HWC MACT and the 2011 Title V Permit.  *See* 40 C.F.R. §§ 63.1206(c)(1),  63.1209(l)(2) (incorporating by reference § 63.1209(o)(3)), (o)(3)(ii); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(7), 5(f)(12) of the 2011 Title V Permit.

158.    The violations of the minimum scrubber pressure drop OPL for the Packed Bed Scrubber set forth in the preceding Paragraph also constitute violations of the HWC MACT's emissions limits for dioxins/furans, particulate matter, mercury, hydrogen chloride and chlorine gas and the 2011 Title V Permit.  *See* 40 C.F.R. §§ 63.1206(c)(1)(iii), 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)), (l)(2) (incorporating by reference § 63.1209(o)(3)), (l)(3) (incorporating by reference § 63.1209(k)(5)), (o)(3)(ii); § 63.1219(a)(2), § 63.1219(a)(6); and Conditions 5(f)(7), 5(f)(12), 5(b)(2)(b), and 5(b)(2)(g) of the 2011 Title V Permit.

159.    Unless restrained by an Order of the Court, these violations will continue.

160.    As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for injunctive relief and the assessment of a civil penalty up to the statutory maximum amounts set forth in Paragraph 50 above per violation per day for each violation.

<u>**THIRTEENTH CLAIM FOR RELIEF**</u>

**Violation of OPL for Minimum Scrubber Tank Volume or Liquid and Emissions Limits for Dioxins/Furans and Particulate Matter at the Ring Jet Scrubber**

161.    Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

162.    At all relevant times herein, the HWC MACT and the 2011 Title V Permit required Heritage to establish and comply with an OPL for the minimum scrubber tank volume or liquid level for the Ring Jet Scrubber in order to comply with the HWC MACT's dioxins/furans and particulate matter emissions limits.  *See* 40 C.F.R. § 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)), (l)(3) (incorporating by reference § 63.1209(k)(5)), (m)(1)(i)(B)(4); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), 5(f)(13) of the 2011 Title V Permit.

163.    In the 2010 NOC, Heritage identified the OPL for minimum scrubber liquid level for the Ring Jet Scrubber as 1.7 feet effective for the period of November 18, 2010 through June 17, 2015.

164.    Semi-Annual Reports prepared and submitted by Heritage show that on December 6, 2011, Heritage operated the Heritage incinerator in a manner that failed to comply with the minimum scrubber tank volume or liquid level OPL for the Ring Jet Scrubber in violation of the HWC MACT and the 2011 Title V Permit.  *See* 40 C.F.R. §§ 63.1206(c)(1), 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)), (l)(3) (incorporating by reference

§ 63.1209(k)(5)), (m)(1)(i)(B)(4); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), 5(f)(13) of the 2011 Title V Permit.

165.    The violations of the minimum scrubber volume or liquid level OPL for the Ring Jet Scrubber set forth in the preceding Paragraph also constitute violations of the emissions limits for dioxins/furans and particulate matter set forth in the HWC MACT and the 2011 Title V Permits.  *See* 40 C.F.R. §§ 63.1206(c)(1)(iii), 63.1209(k)-(m), 63.1219(a)(1)(i)(A) and (a)(7); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(6), 5(f)(13), 5(b)(2)(a), 5(b)(2)(h) of the 2011 Title V Permit.

166.    As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for the assessment of a civil penalty up to the statutory maximum amounts set forth in Paragraph 50 above per violation per day for each violation.

## FOURTEENTH CLAIM FOR RELIEF

### Violation of OPL for Minimum Scrubber Water Flowrate and Emissions Limits for Dioxins/Furans, Mercury, Particulate Matter, Hydrogen Chloride and Chlorine Gas at the Ring Jet Scrubber

167.    Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

168.    At all relevant times herein, the HWC MACT and the 2011 Title V Permit required Heritage to establish and comply with an OPL for the minimum liquid to gas ratio or the minimum scrubber water flowrate and maximum flue gas flowrate for the Ring Jet Scrubber in order to comply with the HWC MACT's dioxins/furans, mercury, particulate matter, hydrogen chloride and chlorine gas emissions limits.  *See* 40 C.F.R. § 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)), (l)(2) (incorporating by reference § 63.1209(o)(3)), (l)(3) (incorporating by reference § 63.1209(k)(5)), (m)(1)(i)(C), (o)(3)(v); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), and 5(f)(6), 5(f)(7), 5(f)(12), and 5(f)(13) of the 2011 Title V Permit.

169.    In the 2015 NOC, Heritage identified the OPL for minimum scrubber water flowrate for the Ring Jet Scrubber as 494.7 gallons per minute (gpm) on an hourly rolling average effective for the period June 18, 2015 to the present.

170.    Semi-Annual Reports prepared and submitted by Heritage show that on February 17, 2017, Heritage operated the Heritage incinerator in a manner that failed to comply with the minimum scrubber water flowrate OPL for the Ring Jet Scrubber in violation of the HWC MACT and the 2011 Title V Permit. *See* 40 C.F.R. §§ 63.1206(c)(1); 63.1209(k)(5) (incorporating by reference § 63.1209(m)(1)), (l)(2) (incorporating by reference § 63.1209(o)(3)), (l)(3) (incorporating by reference § 63.1209(k)(5)), (m)(1)(i)(C), (o)(3)(v); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), and 5(f)(6), 5(f)(7), 5(f)(12), and 5(f)(13) of the 2011 Title V Permit.

171.    The violations of the minimum scrubber water flowrate OPL for the Ring Jet Scrubber set forth in the preceding Paragraph also constitute violations of the emissions limits for dioxins/furans, mercury, particulate matter, hydrogen chloride and chlorine gas set forth in the HWC MACT and the 2011 Title V Permit.  *See* 40 C.F.R. §§ 63.1206(c)(1)(iii), 63.1209(l), (o), 63.1219(a)(1)(i)(A), 63.1219(a)(2), 63.1219(a)(6), and 63.1219(a)(7); and Conditions 5(f)(6), 5(f)(7), 5(f)(12), 5(f)(13), 5(b)(2)(a), 5(b)(2)(b), 5(b)(2)(g), and 5(b)(2)(h) of the 2011 Title V Permit.

172.    As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for the assessment of a civil penalty up to the statutory maximum amounts set forth in Paragraph 50 above per violation per day for each violation.

## FIFTEENTH CLAIM FOR RELIEF

### Violation of OPL for Minimum Scrubber pH and
### Emissions Limits for Hydrogen Chloride and Chlorine Gas at the Scrubber

173.     Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

174.     At all relevant times herein, the HWC MACT and the 2011 Title V Permit required Heritage to establish and comply with an OPL for the minimum scrubber pH in order to comply with the HWC MACT's hydrogen chloride and chlorine gas emissions limits. *See* 40 C.F.R. § 63.1209(o)(3)(iv); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(7), and 5(f)(12) of the 2011 Title V Permit.

175.     In the 2010 NOC, Heritage identified the OPL for minimum scrubber pH as 7.6 on an hourly rolling basis effective for the period of November 18, 2010 through June 17, 2015.

176.     Semi-Annual Reports prepared and submitted by Heritage show that on May 18, 2014, Heritage operated the Heritage incinerator in a manner that failed to comply with the minimum scrubber pH OPL in violation of the HWC MACT and the 2011 Title V Permit. *See* 40 C.F.R. §§ 63.1206(c)(1), 63.1209(o)(3)(iv); and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(7), and 5(f)(12) of the 2011 Title V Permit.

177.     The violations of the minimum scrubber pH OPL set forth in the preceding Paragraph also constitute violations of the emissions limits for hydrogen chloride and chlorine gas set forth in the HWC MACT and the 2011 Title V Permit. *See* 40 C.F.R. §§ 63.1209(o)(3)(iv), 63.1219(a)(6), and Conditions 5(b)(2)(b), 5(b)(2)(g), 5(f)(7), and 5(f)(12) of the 2011 Title V Permit.

178.     As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for the assessment of a civil penalty up to the

statutory maximum amounts set forth in Paragraph 50 above per violation per day for each violation.

## SIXTEENTH CLAIM FOR RELIEF

### Violation of ESP Field OPL and Emissions Limits for Particulate Matter at the ESP

179.    Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

180.    At all relevant times herein, the HWC MACT and the 2011 Title V Permit required Heritage to establish a set of OPLs for its ESP that are a representative and reliable indicator of the control device performance in order to comply with the HWC MACT's particulate matter emissions limits.  These OPLs shall consist of minimum operating parameter limit or a maximum operating parameter limit within which the control device can operate and still continuously achieve the same operating conditions as during the performance test.  *See* 40 C.F.R. § 63.1209(m)(1)(iv) and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), and 5(f)(13) of the 2011 Title V Permit.

181.    In the 2015 NOC, Heritage identified the OPL for the minimum power to each ESP field as 100 milliamps (mA) on an hourly rolling average basis effective for the period of June 18, 2015 to the present.

182.    Semi-Annual Reports prepared and submitted by Heritage show that on February 18, 2017, Heritage operated the ESP on the Heritage incinerator in a manner that failed to comply with the minimum ESP power OPL in violation of the HWC MACT and the 2011 Title V Permit.  *See* 40 C.F.R. §§ 63.1206(c)(1), 63.1209(m)(1)(iv) and Conditions 5(b)(1)(e), 5(b)(2)(l), 5(d)(1), 5(f)(13) of the 2011 Title V Permit.

183.    The violation of the ESP power OPL set forth in the preceding Paragraph also constitute a violation of the emissions limits for particulate matter set forth in the HWC MACT

and the 2011 Title V Permits.  *See* 40 C.F.R. §§ 63.1209(m), (l)(iv), 63.1219(a)(7); and

Conditions 5(b)(2)(h) and 5(f)(13) of the 2011 Title V Permit.

184.    As a result of the above-listed violations and pursuant to Section 113(b) of the

CAA, 42 U.S.C. § 7413(b), Heritage is liable for the assessment of a civil penalty up to the

statutory maximum amounts set forth in Paragraph 50 above per violation per day for each

violation.

<u>**SEVENTEENTH CLAIM FOR RELIEF**</u>

**Failure to Duct Emissions to Air Pollution Control Equipment**

185.    Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

186.    At all relevant times herein, the HWC MACT and the Heritage Title V Permits

required that during an automatic waste feed cut off event ("AWFCO") Heritage continue to duct

combustion gases from the Heritage incinerator to the air pollution control system while

hazardous waste remains in the combustion chamber (i.e., if the hazardous waste residence time

has not transpired since the hazardous waste feed cutoff system was activated).  *See* 40 C.F.R.

§ 63.1206(c)(3)(ii); and Conditions 5(b)(1)(e), 5(b)(2)(n), 5(c)(1) and 5(c)(2) of the 2008 and

2011 Title V Permits.

187.    Responses to EPA Requests for Information submitted by Heritage show that on

April 12, 2011 and July 13, 2013, Heritage failed to duct combustion gases to the air pollution

control system during AWFCO events while hazardous waste remained in the combustion

chamber, in violation of the HWC MACT and the 2008 and 2011 Title V Permits.  *See* 40 C.F.R.

§ 63.1206(c)(3)(ii) and Conditions 5(b)(1)(e), 5(b)(2)(n), 5(c)(1) and 5(c)(2) of the 2008 and

2011 Title V Permits.

188.     As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Heritage is liable for the assessment of a civil penalty up to the statutory maximum amounts set forth in Paragraph 50 above per violation per day for each violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States respectfully requests that this Court:

1.     Issue an injunction requiring Heritage to remedy its past and current non-compliance with the CAA and the implementing regulations under that statute, and to comply prospectively with all applicable requirements;

2.     Assess civil penalties against Heritage for up to the amounts provided in the CAA for each day of violation;

3.     Award the United States its costs and disbursements in this action; and

4.     Grant such relief as this Court deems just and proper.

Respectfully submitted,

THE UNITED STATES OF AMERICA

Date:   October 10, 2018

/s/ Bruce S. Gelber
BRUCE S. GELBER
Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


ELIZABETH LOEB
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone:  (202)616-8916
Elizabeth.loeb@usdoj.gov


JUSTIN E. HERDMAN
United States Attorney
Northern District of Ohio

/s/ Steven J. Paffilas
STEVEN J. PAFFILAS (Bar No. 0037376)
Assistant United States Attorney
Northern District of Ohio
801 W. Superior Avenue, Suite 400
Cleveland, OH 44113
Telephone:  (216) 622-3698
Facsimile:  (216) 522-4928
Steven.Paffilas@usdoj.gov

OF COUNSEL:

JOHN MATSON
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 5